# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**RENE M. TODD,**

    **Plaintiff,**

vs.                                                                  **Case No.: 8:12-CV-2338-T-24EAJ**

**CAROLYN W. COLVIN**
**Commissioner of Social**
**Security Administration,[1]**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the Court recommends affirming the Commissioner's decision and dismissing this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler,

---

[1] The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for Michael J. Astrue, former Commissioner of Social Security. See Fed. R. Civ. P. 25(d).

703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, the reviewing court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On July 27, 2009, Plaintiff filed applications for DIB and SSI, alleging disability beginning June 25, 1999. (T 27) At the hearing, Plaintiff amended her alleged onset date to July 19, 2008. Plaintiff's applications were denied initially and upon reconsideration, and an administrative hearing was held on March 4, 2011. (T 27) Thirty-eight years old at the time of the hearing, Plaintiff has a high school education and past relevant work as a cashier and/or checker. (T 38)

On March 11, 2011, the ALJ denied Plaintiff's claims. (T 27-40) Although the ALJ found Plaintiff to have severe impairments, including: "back disorders, chronic knee pain, obesity, affective disorder, personality disorder, and anxiety-related disorder," the ALJ determined that these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 30) The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of sedentary work; Plaintiff is able to

> lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally. However, [she] cannot climb ladders, ropes or scaffolds but [Plaintiff] can occasionally perform other postural movements. [Plaintiff] must avoid all exposure to hazards[] . . . [and] be able to alternate positions every 30 minutes. [She] is limited to unskilled work in a structured, low volume setting that does not require direct, ongoing interaction with the public.

(T 32)

Finding Plaintiff unable to perform any past relevant work, the ALJ nevertheless determined that Plaintiff was capable of performing other jobs available in significant numbers in the national economy, such as a surveillance system monitor, visual inspector, and a lens inserter. (T 39) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period.

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

Plaintiff argues that the ALJ erred by (1) failing to obtain an opinion as to Plaintiff's physical limitations from an examining source and by failing to obtain a medical source statement from her treating psychiatrist; (2) failing to make proper credibility findings as to Plaintiff's testimony; and (3) incorrectly determining Plaintiff's residual functional capacity by failing to adequately account for her moderate difficulties in concentration, persistence or pace and in finding she has the ability to perform a limited range of sedentary work, despite using a cane. (Dkt. 11)

**A.**     Plaintiff claims the ALJ erred in not obtaining an opinion regarding Plaintiff's physical limitations from an examining source and not obtaining a medical source statement from treating psychiatrist Melinda Edwards, M.D. ("Dr. Edwards").

In evaluating Plaintiff's work-related restrictions and credibility, the ALJ noted that no

treating physician had recommended any restrictions, which the ALJ found at odds with Plaintiff's allegations of "totally disabling symptoms." (T 37)  The ALJ also noted that "there are no medical opinions of record from treating or evaluating physicians." (T 38)  Instead, the ALJ relied on opinions from two non-examining sources in determining Plaintiff's physical limitations as "generally consistent with the other evidence of record." (T 37)

However, Plaintiff points out that she underwent a consultative examination by Rose Delores Gibbs, M.D. ("Dr. Gibbs"), on January 21, 2010 regarding her physical limitations. (T 298-99)  Dr. Gibbs was the only physician appointed to examine Plaintiff for her physical impairments.  Although the ALJ does not refer to Dr. Gibbs by name in the decision, the physician's findings are summarized in the decision:

> In January 2010, the claimant reported ongoing grinding and pain in her right knee, as well as pain and stiffness in her left knee. Upon examination, the claimant exhibited a broad gait and she ambulated with a cane and a limp in her left leg. She was unable to tandem walk, squat or perform straight leg raising due to pain. Her left knee exhibited a decreased range of motion due to pain and stiffness but it was only mildly swollen without any heat or redness. Interestingly, she was able to get off the examination table using her cane and come down on her left leg. The claimant was assessed with chronic right knee pain. (Exhibit 4F).

(T 34)

Plaintiff has not shown that the ALJ inaccurately stated Dr. Gibbs' pertinent findings.  There is nothing in the physician's medical notes which contradict the ALJ's physical RFC assessment. As noted above, Dr. Gibbs diagnosed Plaintiff with chronic right knee pain, but indicated that she was able to put weight on her left leg with use of a cane, despite complaints of pain and stiffness. He also found her unable to tandem walk, squat, or perrform straight leg raising due to pain. (T 34)

Although Plaintiff states that the ALJ should have asked Dr. Gibbs for a medical opinion as

4

to Plaintiff's physical limitations, that duty arises only when the evidence received from the medical source is inadequate to determine whether a claimant is disabled. See Couch v. Astrue, 267 F. App'x 853, 855 (11th Cir. 2008) (per curiam) (unpublished); Gallina v. Comm'r of Soc. Sec., 202 F. App'x 387, 388 (11th Cir. 2006) (per curiam) (unpublished).[2] Here, the record was adequate to permit an assessment of Plaintiff's physical limitations. It was not necessary to obtain an RFC assessment from a treating source regarding Plaintiff's work-related limitations due to her physical impairments. The ALJ properly relied upon the assessments of the non-examining physicians in finding that Plaintiff can perform sedentary work.[3]

Regarding Plaintiff's mental limitations, the ALJ gave "great weight" to the findings of the state agency psychological consultants, as supported by the other evidence of record. (T 37) In doing so, the ALJ noted the absence of any medical opinions regarding Plaintiff's mental limitations from treating or evaluating physicians. (T 38) Plaintiff cites the findings of Melinda Edwards, M.D. ("Dr. Edwards"), a psychiatrist who treated Plaintiff at the Berkeley County Medical Center for

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36–2.

[3] Michael Neboschick, Ph.D., one of the state agency psychological consultants, determined that Plaintiff was able to "sustain attention for simple, structured tasks for periods of two-hour segments" and "[a]dapt to changes if they are gradually introduced." Plaintiff could also make simple decisions related to work, take care of his appearance and hygiene, "recognize and appropriately respond to hazards[,] [w]ork in the presence of others," and "[a]ccept supervision if constructively given." He also indicated that Plaintiff "would work best in structured, low volume settings that do not require much direct, on-going interaction with the public." (T 334) Lisa Clausen, Ph.D., another state agency psychological consultant, made the same findings. (T 384) The ALJ found the opinions of Neboschick and Clausen consistent with the other evidence of record and accorded them significant weight. However, the ALJ found Plaintiff's abilities slightly more limited than the state agency psychological consultants determined and to address Plaintiff's obesity, pain, and other subjective complaints reduced Plaintiff's RFC to a sedentary level with a sit/stand option. (T 37)

approximately thirteen months (T 336-42, 434-38) and contends that the ALJ should have obtained a medical source statement from Dr. Edwards instead of relying on the opinions of non-examining sources to determine her mental impairments.

Although the ALJ did not mention Dr. Edwards by name, he did summarize Plaintiff's treatment for affective disorder, personality disorder, and anxiety-related disorder. (T 35)  These facts come, in part, from Dr. Edwards' treatment notes. (T 336-59, 434-38) Between May 2009 and December 2010, Plaintiff had mental health treatment on eight occasions.  She reported symptoms showing improvement over that period of time, and the medication seemed to help.  However, in February 2011, Plaintiff attempted suicide by overdose, although on discharge she denied any suicidal ideations and was reportedly functioning very well. (T 441-63)  Also, although the ALJ did not evaluate the GAF scores, the ALJ did include them in the summary; Plaintiff's GAF scores ranged from 60 to 80 with the higher scores towards the end of her treatment with Dr. Edwards. (T 35, 337-39, 354, 387, 435, 438)[4]  Dr. Edwards did not opine as to any work-related limitations Plaintiff had due to her mental impairments.

Plaintiff does not demonstrate any prejudice as a result of the ALJ failing to recontact Dr.

---

[4] The GAF scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without considering any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th ed. text rev. 2000).  A GAF score represents a subjective determination (based on a scale of 100 to 1) of a patient's overall level of functioning. Id.  A GAF score of 41–50 indicates serious symptoms; a score of 51–60 indicates moderate symptoms; and a score in the range of 61–70 indicates mild symptoms. Id. at 32–34.  In the context of Social Security benefits determinations, the Commissioner has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." Wind v. Barnhart, 133 Fed. App'x 684, 692 n.5 (11th Cir. 2005) (per curiam) (unpublished) (citation and internal quotation marks omitted). Additionally, the 2013 revisions to DSM manual do not provide for the use of GAF scores. Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") at 16 (5th ed. text rev. 2013).

Edwards. The notes from Dr. Edwards are clear and consistent, and the record as a whole contains sufficient evidence to allow the ALJ to adequately evaluate Plaintiff's impairments. Additionally, Plaintiff's implication that further information from Dr. Edwards would support, rather than undermine, her disability claim is speculative. It was not necessary to obtain an RFC assessment from Dr. Edwards regarding Plaintiff's work-related limitations due to her mental impairments.

Further, the ALJ found the opinions of the non-examining state agency psychological consultants consistent with the other evidence of record and accordingly took into account Plaintiff's obesity, pain, and other subjective complaints when reducing Plaintiff's RFC to a sedentary level with a sit/stand option. (T 37, 332-34, 382-84)

**B.**     Plaintiff states the ALJ failed to make proper credibility findings by placing undue emphasis on Plaintiff's daily activities, GAF scores, and making conclusory statements.

The ALJ extensively analyzed Plaintiff's subjective complaints, including pain and psychological symptoms, in light of the entire record. (T 33-38) The ALJ found that Plaintiff underwent back surgery in 1998 and tore both her ACL and MCL in 2009. Claimant alleged severe pain as a result of these injuries and surgery, such that she could not climb the stairs to her bathroom to shower regularly, could only stand for short periods of time, and could not pick up heavy items due to knee pain. (T 33, 59-61) The record indicates Plaintiff reported low back pain with decreased sensation on the right side of her left leg and foot, although an examination of her back revealed no evidence of significant pain. (T 33, 298, 300-01, 309)

Regarding her knee pain, in March and April 2009, Plaintiff reported severe pain in her left knee and difficulty straightening and flexing her left leg; she was first diagnosed with a small joint effusion, some spurring on the patella, and some subchondral changes on the medial femoral

7

condyle. An April 2009 MRI of Plaintiff's left knee indicated a large joint effusion with synovitis and loose bodies, a medial meniscus tear and possibly a lateral meniscus tear, as well as an ACL tear. In June 2009, Plaintiff received a steroid injection in her left knee and underwent a left knee arthroscopic debridement and medial lateral meniscectomies in November 2009. In January 2010, Plaintiff reported to Dr. Gibbs more pain and stiffness in her left knee as well as grinding and pain in her right knee; she was diagnosed with right chronic knee pain. At that time, pain prevented her from being able to tandem walk, squat or perform a straight leg raise. Plaintiff exhibited a decreased range of motion in her left knee but was still able to get down off the examination table on her left leg. (T 33-34, 231-236, 298, 300, 309, 419-23)

The ALJ also found Plaintiff suffered from obesity, a severe impairment. However, despite her obesity, Plaintiff was able to move and sustain consistent function; Plaintiff had good muscle tone, and the record did not demonstrate sleep apnea, heart disease, uncontrolled blood pressure, shortness of breath, or wheezing. (T 34, 298-300)

Plaintiff alleged her functional abilities were severely limited due to her pain and asserted that she needed a hand rail to climb stairs, was unable to lift heavy objects, had trouble maintaining balance and walking short distances, could stand for only short periods of time, and had difficulty sleeping due to pain. (T 33, 55-58, 59-62)

The ALJ found that the activities Plaintiff performed as a part of her daily life were inconsistent with her allegations of pain. Though Plaintiff testified she used a cane for balance, she stated that her physicians had not prescribed a cane for her. She indicated that the knee brace, which was prescribed, allowed her to function almost normally. (T 36-37, 54, 287) Plaintiff also failed to attend physical therapy consistently. (T 34, 257-283) Plaintiff reported she prepares simple

meals, tries to wash dishes for short periods of time, takes care of her personal hygiene, shops with a motorized cart, visits with a friend occasionally, and exercises by using a weight shaker for her arms and by moving her legs in her recliner. Plaintiff also indicated that she goes to the park and goes bowling with her sons.  Treatment notes from 2010 corroborated these activities, showing Plaintiff performed household chores, used the telephone and computer, and was active with her children. (T 33, 59-61, 296, 298)  The ALJ found such activities to represent an active and varied lifestyle, and found that Plaintiff testified to much more severe symptoms at the hearing than she presented to her physicians, indicating symptom magnification and exaggeration. (T 36)

Regarding Plaintiff's severe mental impairments of affective disorder, personality disorder, and anxiety related disorder, the ALJ found that, though Plaintiff reported crying spells, isolation, decreased energy, and difficulty sleeping in July 2009, as well as attempted suicide by overdose in February 2011, the record indicates Plaintiff's medication regimen, particularly Prozac and Trazadone, was effective in controlling her symptoms, improving her mood and sleeping problems. After her alleged attempted suicide, Plaintiff reported only moderate depression and stated that she had not experienced anxiety, anger, delusions, self-injury, unusual behavior, paranoia, or hallucinations; Plaintiff also indicated her appetite and sleep patterns were normal. (T 30, 35-36, 435-38, 441-43, 469)

Subjective complaints are evaluated according to a three-part "pain standard" used to evaluate a claimant's testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition, or (3) the objectively determined medical condition is of

9

sufficient severity that it would reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam). If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted).

The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished) (citations omitted).

Although Plaintiff faults the ALJ's reliance on her activities of daily living, Plaintiff's social interactions, activities, and housekeeping abilities are only part of the evidence cited by the ALJ in not fully crediting Plaintiff's testimony as to disabling symptoms.

Nor did the ALJ rely on Plintiff's GAF scores in the credibility analysis. Although GAF scores are not definitive in terms of disability, Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (per curiam) (unpublished), the ALJ referred to Plaintiff's GAF scores only in the summary of her mental health treatment, not in evaluating her credibility. (T 35)

Finally, although the ALJ concluded that Plaintiff's symptoms were not credible to the extent they were "inconsistent with the ...residual functional capacity assessment," that statement was not impermissible boilerplate indicating a failure to follow the legal standards for evaluating subjective

symptoms. Plaintiff quotes the statement out of context. The ALJ's allegedly improper reference was no more than a one-sentence conclusion which followed several paragraphs of detailed discussion of Plaintiff's alleged limitations as compared to other evidence of record. (T 37) The cases by other federal appellate courts expressing disapproval of similar language involved cursory credibility evaluations which lacked the specific factual support present in the ALJ's decision in this case. [5]

Here, the ALJ applied the correct legal standard in addressing Plaintiff's testimony regarding the severity of her symptoms of pain and other limitations. (T 32, 36-38) And substantial evidence supports the ALJ's findings pertinent to this issue. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

**C.**     Plaintiff also challenges the ALJ's mental RFC assessment because the hypothetical question failed to account for Plaintiff's difficulties in concentration, persistence, and pace.

In assessing Plaintiff's mental impairments, the ALJ reviewed four broad functional areas, known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 20 C.F.R. § 404.1520a(c) (2011). (T 30-31) The ALJ correctly noted that these "paragraph B" criteria are not an RFC assessment but are

---

[5] Plaintiff cites Bjornson v. Astrue, 671 F.3d 640 (7th Cir. 2012) and Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012) for the proposition that the ALJ's statement was a boilerplate statement and improper credibility analysis. However, Bjornson and Shauger are distinguishable from the instant case. In Bjornson, the appellate court reversed where the ALJ used boilerplate language to explain his decision that the plaintiff lacked credibility, under circumstances indicating the plaintiff's testimony was actually consistent with the bulk of the medical evidence. Bjornson, 671 F.3d at 649. In Shauger, the ALJ failed to consider certain relevant factors, and in doing so "failed to build a logical bridge between the evidence and her conclusion [regarding the plaintiff's credibility.]" Shauger, 675 F.3d at 697-98. Here, however, the ALJ compared and discussed the discrepancies between Plaintiff's testimony and allegations and the evidence of record.

11

used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. (T 31) And the ALJ indicated that the RFC assessment reflected the degree of limitation found in the "paragraph B" mental function analysis. (Id.)

Before finding a claimant capable of working despite a moderate limitation in maintaining concentration, persistence, and pace, an ALJ must: 1) indicate that medical evidence suggests the claimant can work despite the limitation; or 2) explicitly or implicitly account for the limitation in a VE hypothetical. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1181 (11th Cir. 2011).

An ALJ's hypothetical question may implicitly account for limitations in concentration, persistence, and pace by restricting the claimant to certain types of work where the medical evidence indicates that the claimant can perform this work despite the limitations. Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872 (11th Cir. 2011). See also Smith v. Comm'r of Soc. Sec.,486 F. App'x 874, 876-77 (11th Cir. Aug. 15, 2012) (per curiam) (unpublished).

Plaintiff's situation is like that of the claimant in Jarrett. The ALJ found that Plaintiff's moderate restrictions in concentration, persistence, and pace did not preclude her from performing "unskilled work that has no direct, ongoing interaction with the general public." (T 32) And the hypothetical to the VE included the limitation to "unskilled work that has no direct, ongoing interaction with the general public." (T 64)

This limitation was consistent with the medical evidence and physician opinions of record, which indicated that after her alleged suicide attempt, Plaintiff's mental impairments were effectively managed by medication and that her sleep patterns, appetite, and other symptoms were improved; additionally, no examining or treating physician indicated limitations on Plaintiff's ability to work. (T 35, 38, 57, 435-38, 441-43, 446-50, 458, 469)

y

used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. (T 31) And the ALJ indicated that the RFC assessment reflected the degree of limitation found in the "paragraph B" mental function analysis. (Id.)

Before finding a claimant capable of working despite a moderate limitation in maintaining concentration, persistence, and pace, an ALJ must: 1) indicate that medical evidence suggests the claimant can work despite the limitation; or 2) explicitly or implicitly account for the limitation in a VE hypothetical. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1181 (11th Cir. 2011).

An ALJ's hypothetical question may implicitly account for limitations in concentration, persistence, and pace by restricting the claimant to certain types of work where the medical evidence indicates that the claimant can perform this work despite the limitations. Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872 (11th Cir. 2011). See also Smith v. Comm'r of Soc. Sec.,486 F. App'x 874, 876-77 (11th Cir. Aug. 15, 2012) (per curiam) (unpublished).

Plaintiff's situation is like that of the claimant in Jarrett. The ALJ found that Plaintiff's moderate restrictions in concentration, persistence, and pace did not preclude her from performing "unskilled work that has no direct, ongoing interaction with the general public." (T 32) And the hypothetical to the VE included the limitation to "unskilled work that has no direct, ongoing interaction with the general public." (T 64)

This limitation was consistent with the medical evidence and physician opinions of record, which indicated that after her alleged suicide attempt, Plaintiff's mental impairments were effectively managed by medication and that her sleep patterns, appetite, and other symptoms were improved; additionally, no examining or treating physician indicated limitations on Plaintiff's ability to work. (T 35, 38, 57, 435-38, 441-43, 446-50, 458, 469)

Before finding Plaintiff capable of working despite her moderate difficulties in concentration, persistence, and pace, the ALJ indicated that the medical evidence confirmed Plaintiff's ability to work despite this limitation. (T 38) See Winschel, 631 F.3d at 1181. Therefore, the ALJ was not required to account for the limitation in the VE hypothetical. Id.; see also Jarrett, v. 422 F. App'x at 872.

Plaintiff also contends that, although she testified that she used a cane, the hypothetical questions to the VE did not include that limitation. (T 54, 65) The limitations in the hypothetical question restricted Plaintiff to a limited range of sedentary work, permitting alternating positions every 30 minutes (a sit/stand option), and no climbing ladders, ropes and scaffolds. (T 64) In evaluating Plaintiff's subjective complaints, as described previously, the ALJ expressly found that no physician had prescribed a cane for Plaintiff and that she testified that her knee brace allows her to function almost normally. (T 36-37). As Plaintiff has not shown that the ALJ erred in evaluating Plaintiff's postural restrictions, it was not error to omit from the hypothetical question or RFC assessment, Plaintiff's alleged need to use a cane for balance.

Accordingly, Plaintiff has not shown that the record supports a greater restriction than the one imposed by the ALJ in Plaintiff's RFC and in the hypothetical posed to the VE. There is substantial evidence to support the ALJ's findings on these issues.

### III. Conclusion

For the foregoing reasons, the ALJ's decision is supported by substantial evidence and the proper legal principles. Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) the decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2)     the Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).


**Date:   February 12, 2014**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge